[Sac. No. 4895. In Bank.—August 25, 1937.]

KARL ROZEWSKI et al., Appellants, v. J. J. SIMPSON, Respondent.

W. E. Davies and J. E. Ebert for Appellants.

Homer Lingenfelter for Respondent.

THE COURT.—This is an appeal by plaintiffs from a judgment entered in an action to recover damages for the flooding of their land. The verdict of the jury was for defendant J. J. Simpson.

In 1932 and 1933 plaintiffs and defendants were in possession of adjoining tracts of land in Yuba County. Plaintiffs held their property under a contract of purchase, a forty-acre tract which they had improved and were operating as a dairy farm. The adjoining tract of five hundred acres, in possession of defendant J. J. Simpson, as lessee, was largely farmed to rice and was irrigated and flooded during the rice season with water imported from an outside source.

Plaintiffs charged that in August and September, 1932, and again in September, 1933, defendants "wilfully, negligently and carelessly caused water to be diverted from their said land onto, overflowing and flooding the land of plaintiffs" and carelessly allowed the water to remain upon the land of plaintiffs for a period of about eight days until the same became stagnant, menacing the health of plaintiffs and their family, causing the air to become foul, dairy cows to become diseased from drinking stagnant water, crops to be destroyed

and other damage, in the sum of $5,475. They also prayed for an injunction to enjoin such flooding in future. Defendants set up in their answer as a special defense that their lands were enclosed by levees designed for the purpose of protecting plaintiffs' premises, and for keeping them from being flooded by water used in the growing of rice, but that plaintiffs had made various cuts and openings in said levees before any flooding of plaintiffs' lands and obtained water therefrom without the knowledge or consent of defendants, and that plaintiffs were so negligent in the maintenance, operation and control of the cuts and openings that their lands were flooded.

The lease of defendant J. J. Simpson was not renewed in 1934 and therefore the issue of injunction was dispensed with. Plaintiffs dismissed the action against all defendants except J. J. Simpson, and the case went to the jury on the question of liability for damages alone. After denial of their motion for a new trial plaintiffs prosecuted this appeal.

The evidence was conflicting as to the cause of the overflowing of the rice water in 1932. In that year defendant had a border check, or levee, along the southern border of his land, which lay to the north of plaintiffs' land, this levee being between the two properties, it having been constructed by defendant to prevent water from flowing onto plaintiffs' land during the time defendant was draining the rice lands. The evidence showed that during this year and at various times prior to the release of the rice waters by defendant, plaintiff Karl Rozewski cut holes in this border check and took water from defendants' land onto his own for the purpose of irrigating his lands. One of defendant's sons testified: ''In 1932, we was draining the water off the rice field to let the rice get a start and that is when he (Karl Rozewski) came and asked me if he could have some of that water because his ditch wasn't fixed to get water and if he could take that water he wouldn't have to pay for it.'' This witness told plaintiff he could have such water as he needed, as it was only spill water anyway. Defendant produced evidence to show such damage as resulted in this year was caused by water flowing onto plaintiffs' land by the openings plaintiff Karl Rozewski had made. One witness testified that in 1932 a little water might have got on plaintiffs' land from the draining but that it was not enough ''to hurt anything'', and also that Karl Rozewski did not complain to defendants about

any water getting onto his land in 1932 from the draining, but that Karl Rozewski told him "he needed the water anyway; it didn't make any difference". There was also testimony showing that some of the damage alleged by plaintiffs to have been caused by the draining in 1932 was caused by plaintiffs' acts in irrigating his own land and the water remaining thereon too long, due to the ground being low, and surrounded by high ground.

As to the flooding in 1933, it was shown that defendant caused to be erected a solid, substantial levee, about four feet high, between his land and plaintiffs', to keep the water from flowing upon the land of the latter during the unwatering season; that plaintiff Karl Rozewski cut a large hole in this levee, at the northeast corner of his land and took water through it from defendant's land onto his own, from time to time during the summer, and that later in the summer and about the time defendant was preparing to drain his rice lands this plaintiff installed a check box, with removable board, in the hole made by him in the levee in order to facilitate the release of water from defendant's land onto his own. It appeared that a highway ran along the east side of plaintiffs' land up through and intersecting that of defendant, and that on each side of this highway there was a drainage ditch through which, it appears, both parties had the right to drain water from their land. Defendants drained their rice land immediately to the north of plaintiffs' land without any water getting onto plaintiffs' land, the board being in place in the check box during this time. It was shown that defendants spent a much longer time draining this parcel of land than would have been necessary ordinarily, because the drainage ditches on either side of the highway were grown up with weeds and tule, and would permit only the flow of a limited amount of water at a time. It also appeared that a day or so before Labor Day of 1933, defendants having finished the draining of the land immediately to the north of plaintiff, began to drain their rice land on the east side of the highway, to the north of plaintiffs' land; that before so doing, they inspected their levee thoroughly, saw that the check box belonging to plaintiffs had its board in place, and closed and sealed the box with mud to ensure its safety; that during the night of Labor Day someone (the record does not disclose who it was) removed the protecting board from the check box and in the morning plaintiffs' land was covered

with water. The water from the northeast of plaintiffs' land where defendant was draining his rice was running into the ditch on the east side of the highway, through a pipe under the highway to the west, and thence through the hole made in the check box by the removal of the board. Plaintiffs testified that the night before the flooding at about 5 o'clock, they saw the water coming upon their land from the direction of the check box, but they did nothing to stop it, and the record does not show whether or not there was much, if anything, they could do to stop it. However, the following morning, when his land was covered with water Karl Rozewski sent for some employees of the company from which he was purchasing the land and they plugged up the pipes running under the highway on the west; this was done apparently, to prevent more water coming from the rice lands into the ditch on the west side of the highway, but it appears that the plugging of the pipes caused the water to back up on plaintiffs' land and to stand there for four or five days, becoming stagnant and thus increasing the damage to plaintiffs' land. As to this, one of the sons of defendant, who was in charge of the draining, testified: "Q. Now, after the day when Rozewski's property was wet, was there any interference with the drain underneath the highway? A. Yes, Mr. Lucas sent some men up there and plugged it up so there couldn't no water come through. Q. What effect did that have on keeping the water running off Rozewski's place? A. That stopped it. It had to stand there and wait until the plugs were pulled. Q. That was due to the fact that the Farm Land Investment Company plugged this pipe? A. Yes, sir. They left no escape for the water." This witness further testified that he saw the water on Rozewski's land the next morning but that he thought it was there because Rozewski was using it to irrigate with, that he had done it before and had that much water on his land. It also appears that when defendants were informed that the water was flowing on plaintiffs' land by reason of the board being out, they took steps immediately to mitigate the damage, i. e., they adjusted their check boxes on the land they were draining to diminish the flow, and diverted as much of it as they could with safety in another direction, and thus relieved the flow in the drainage ditches. The facts also disclosed that the ditches were owned by the water district; that defendants had requested the directors of such district to clean out the ditches but

that they had not done so; it was further shown that the defendants had followed the practice, while draining their lands, of regulating the flow of water into the ditches so that no more water than the ditches could carry off was allowed to flow into them at one time, considering the growth of weeds and tule therein. At least two witnesses testified that the flooding in 1933 could not have occurred had the protecting levee of defendant not been cut and the water box installed therein; that the only way the water could have flowed onto plaintiffs' land was through the check box.

Upon this evidence, in some particulars of which there was a sharp conflict, the jury returned their verdict in favor of the defendant J. J. Simpson. But plaintiffs contend that defendant was liable on the theory that the person who for his own purposes brings on his lands and collects there anything likely to do mischief, keeps it at his peril, and if it escapes, is *prima facie* liable for any damages which are a natural consequence of its escape. (*Fletcher* v. *Rylands*, 3 H. L. 330.) We do not find it necessary to now determine whether or not the doctrine of *Fletcher* v. *Rylands, supra,* is applicable in this state. The doctrine was apparently repudiated in the case of *Sutliff* v. *Sweetwater Water Co.*, 182 Cal. 34 [186 Pac. 766], in reference to a factual situation somewhat similar to the case here involved; it was apparently followed in the cases of *Parker* v. *Larsen,* 86 Cal. 236 [24 Pac. 989, 21 Am. St. Rep. 30]; *Kall* v. *Carruthers,* 59 Cal. App. 555 [211 Pac. 43]; *Nola* v. *Orlando,* 119 Cal. App. 518 [6 Pac. (2d) 984]; and in the late case of *Green* v. *General Petroleum Co.*, 205 Cal. 328 [270 Pac. 952, 60 A. L. R. 475], the doctrine of *Fletcher* v. *Rylands, supra,* was apparently approved. (See generally: 17 Cal. L. Rev. 188; 20 Cal. L. Rev. 665; 5 So. Cal. L. Rev. 263–272; 2 So. Cal. L. Rev. 90.) However, in the present case, whether the defendant's liability is that of an insurer or whether it is predicated upon negligence is immaterial, for the reason that the evidence is clearly susceptible of the interpretation that the injury was caused solely and exclusively by the acts of the plaintiffs themselves. Here it is shown that plaintiffs' land would not have been flooded but for their own acts in cutting holes in defendant's levees and installing the check box in one of the openings. The levee having been erected by defendant for the sole purpose of protecting plaintiffs' land from the overflowing of the water and plaintiffs having installed the check

box and used it more or less continuously during the irrigating season to take waters from defendant's land, it was their duty to see that the board was in place at all times other than those occasions upon which it was removed from the box by plaintiffs themselves for irrigating their own land. It seems clear that the proximate and immediate cause of the flooding of plaintiffs' land and its consequent injury was not the impounding of the rice water upon defendant's land by him, or the manner of its maintenance or use, but was the escape of the water through the box which plaintiffs had installed for their own use and benefit. By installing the check box on defendant's levee and making use of the impounded waters, plaintiffs must be deemed to have relieved defendant of any liability he theretofore owed them as an insurer.

■ Plaintiffs also complain of the giving of two instructions on the theory of negligence. While these instructions are not compatible with the theory of absolute liability upon which plaintiffs rely, they were not improper on the theory of negligence. Furthermore, instructions were given on the doctrine of absolute liability. Considering all of the instructions, as a whole, they were manifestly fair to plaintiffs and they cannot complain now, that the jury has found against them upon issues framed by themselves, that these two instructions on negligence should not have been given.

The jury having found in favor of defendant upon conflicting evidence, and there being substantial evidence in the record to sustain such finding, the judgment is affirmed.