[Civ. No. 560. Fifth Dist. May 4, 1966.]

DAVID F. CLARK et al., Plaintiffs and Appellants, v. BENNY Di PRIMA, Defendant and Respondent.

Don C. Mayes for Plaintiffs and Appellants.

Creede & Dawson and Frank J. Creede, Jr., for Defendant and Respondent.

STONE, J.—Appellants and respondent own contiguous farmland with 1,320 feet of common boundary. Respondent's property slopes toward appellants' at a gradient of 1 foot to 100 feet, but there is a ridge or dike along the common boundary approximately 6 feet wide, of varying height. Respondent irrigated his land by flooding, obtaining water from a Merced Irrigation District ditch. Appellants' adjoining land was planted to almond trees, which were irrigated by a sprinkler system.

According to the settled statement on appeal, when appellant David Clark discovered some of his almond trees flooded about 9 a.m. on June 4, 1961, he shut off the flow of water in respondent's ditch at the headgate, some 400 feet away. A Merced Irrigation District ditchtender testified that when he arrived at the property about noon, the water was already shut off. He also testified that respondent's ditch had broken or given way, that the ditch needed cleaning, that he had previously warned respondent to clean the ditch, that the district's gate to respondent's ditch was locked after the 1961 flooding, that respondent cleaned the ditch and the lock was removed.

Respondent testified that the first time he knew of any flooding was when he received a letter from appellants' attorney concerning the escape of water in 1961. However, respondent's

irrigator testified that when he arrived at the scene the morning of June 4, he found a break in the ditch near the irrigation district canal and he observed that water had crossed respondent's land and impounded on appellants' land ''some way.''

When the irrigator offered to help appellant get the water off his land, appellant told him to ''leave it like it is.'' There was also testimony that the ditchtender for the Merced Irrigation District offered to put a pump on appellants' property and remove the water but appellant stated it would be no use, the trees would all be dead, and to leave the water for evidence.

Appellant David Clark testified he took no action to remove any water from his orchard on any occasion. He explained that he discounted the ditchtender's suggestion of the possibility of pumping off the water since no one suggested where a pump was to be obtained and in his opinion the surrounding land was too high for removal of the water by a pump.

There was evidence that the soil on both respondent's and appellants' farms is sandy loam, that both ranches are underlain some 4 to 5 feet below groundlevel with hardpan, and that water has a tendency to collect at a shallow level above the impenetrable hardpan floor.

Testimony as to the condition of appellants' trees was in sharp conflict, as was the testimony as to the length of time water must stand to damage almond trees, the effect of the high watertable in the area, and whether flooding the almond trees damaged them.

Appellants' principal assignment of error is the trial court's ruling that contributory negligence was an issue. Counsel for respondent was permitted to argue contributory negligence to the jury, and the court gave rather complete instructions on the subject. We agree with appellants that the record reflects no evidence of contributory negligence. Respondent seems to argue that appellants' farming practices before the flooding contributed to the damage, if any. For example, he argues that planting trees in a swale into which water would naturally flow if allowed to escape, and planting over hardpan, contributed to the flooding and are within the realm of contributory negligence.

Although the location of the trees and the soil conditions have a bearing on the question whether it was the flooding that caused the condition of the trees after the incident, these facts

have no place in determining the cause of water escaping from a break in respondent's ditch. There is no contention that appellants cut away or weakened the ditchbank by cultivation practices or by any other act. In short, nothing appellants did was a proximate cause of the water escaping.

Respondent also points to appellants' failure to drain the water or permit others to drain it off, but these acts or the failure to act occurred after the flooding. They are things appellants could have done to mitigate damages, but they in no way contributed to the flooding in the first instance.

The vice of permitting respondent to argue contributory negligence to the jury, and of the court instructing the jury on the law of contributory negligence, lies in the complete bar to any recovery by a plaintiff who contributes to the cause of an accident as contrasted with the doctrine of mitigation of damages that rests on proof of avoidable consequences after the happening. (Prosser, Law of Torts (3d ed.) Contributory Negligence, § 64, p. 433; 2 Harper and James, The Law of Torts, pp. 1231-1233.)

Viewing the evidence most favorably toward respondent, the record reflects nothing appellants did to contribute to the break in respondent's ditch or the escape of the water. Although there is evidence from which the jury could have concluded that appellants aggravated their damages by refusing to take any steps to rid their land of water after it had collected upon it, this does not constitute contributory negligence. We conclude, therefore, that the court erred by instructing the jury on the law of contributory negligence. (*Burks* v. *Blackman*, 52 Cal.2d 715, 719 [344 P.2d 301].)

Respondent argues the error was not prejudicial since the jury may well have concluded that appellants' trees suffered no damage from the flooding. As he points out, there is evidence that the condition of the trees after the flooding was due entirely to soil conditions and appellants' poor farming practices over the years. On the other hand, appellants point to evidence that they suffered damages immediately upon the flooding through no fault of their own. We have no way of knowing which view of the evidence the jury took, nor which instructions the jury followed. Under these circumstances, we apply the rule laid down by the Supreme Court in *Oettinger* v. *Stewart*, 24 Cal.2d 133, at page 140 [148 P.2d 19, 156 A.L.R. 1221]: "As stated in *O'Meara* v. *Swortfiguer*, 191 Cal. 12, 15 [214 P. 975]. 'It is true that in determining whether or not a verdict is supported by the evidence, we must

assume that the jury accepted the view most favorable to the respondent. However, in determining whether or not the instructions given are correct, we must assume that the jury might have believed the evidence upon which the instruction favorable to the losing party was predicated, and that if the correct instruction had been given upon that subject the jury might have rendered a verdict in favor of the losing party.' " (See also *Robinson* v. *Cable*, 55 Cal.2d 425, 428 [11 Cal.Rptr. 377, 359 P.2d 929].)

 Appellants assign as prejudicial error the refusal of the court to instruct on the doctrine of strict liability, sometimes referred to as liability without fault. They cite cases indicating that one who brings water upon his land by artificial means does so at his own peril, and if the water escapes to the adjoining land of his neighbor, liability attaches regardless of negligence. At the same time, respondent cites cases holding that California has not applied the rule of absolute liability to water used for irrigation purposes, as contrasted with impounded water.

As the citations indicate, California law concerning liability in tort for escaping irrigation water is less than clear, partly because of a tendency to advert to cases involving injunctive relief against a continuing nuisance. The diverging lines of authority were recognized by the Supreme Court in *Rozewski* v. *Simpson*, 9 Cal.2d 515 [71 P.2d 72]. But the court did not resolve the dichotomy; rather, it said, at page 520: ". . . plaintiffs contend that defendant was liable on the theory that the person who for his own purposes brings on his lands and collects there anything likely to do mischief, keeps it at his peril, and if it escapes, is *prima facie* liable for any damages which are a natural consequence of its escape. (*Fletcher* v. *Rylands*, 3 H.L. 330.) We do not find it necessary to now determine whether or not the doctrine of *Fletcher* v. *Rylands*, *supra*, is applicable in this state. The doctrine was apparently repudiated in the case of *Sutliff* v. *Sweetwater Water Co.*, 182 Cal. 34 [186 P. 766], in reference to a factual situation somewhat similar to the case here involved; it was apparently followed in the cases of *Parker* v. *Larsen*, 86 Cal. 236 [24 P. 989, 21 Am.St.Rep. 30]; *Kall* v. *Carruthers*, 59 Cal.App. 555 [211 P. 43]; *Nola* v. *Orlando*, 119 Cal.App. 518 [6 P.2d 984]; and in the late case of *Green* v. *General Petroleum Co.*, 205 Cal. 328 [270 P. 952, 60 A.L.R. 475], the doctrine of *Fletcher* v. *Rylands*, *supra*, was apparently approved."

We find no Supreme Court case since *Rozewski* deciding the

specific question whether one who brings water upon his land for irrigation purposes does so subject to the risk of absolute liability. Hence we approach the question presupposing it to be unsettled.

The doctrine of strict liability, which is generally presumed to stem from *Fletcher* v. *Rylands* (1868) 3 H.L. 330, is justified upon the theory that a defendant is engaging in an ultrahazardous activity. (See 2 Harper and James, The Law of Torts, Liability Without Fault, § 14.4, pp. 795-802; Prosser on Torts (3d ed.) Strict Liability, § 77, pp. 519-532; Rest., Torts, vol. 3, Ultrahazardous Activity, §§ 519-520, pp. 41-47.) As Prosser points out, English courts long ago modified the scope of the *Fletcher* v. *Rylands* unnatural use doctrine by confining it to "things or activities which are 'extraordinary,' or 'exceptional,' or 'abnormal,' and not to apply to the 'usual and normal.' There must be 'some special use bringing with it increased danger to others, and must not merely be the ordinary use of land or such a use as is proper for the general benefit of the community.' " (P. 520.)

The California Supreme Court, in *Luthringer* v. *Moore*, 31 Cal.2d 489 [190 P.2d 1], which followed the *Rozewski* case by some 11 years, in discussing strict liability, distinguishes between an ultrahazardous activity and one that is usual and normal, that is, an ordinary use such as is proper for the general benefit of the community. Speaking for the court, Mr. Justice Carter said, at pages 498-499: " '. . . An activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage. . . . An activity is a matter of common usage if it is customarily carried on by the great mass of mankind or by many people in the community. It does not cease to be so because it is carried on for a purpose peculiar to the individual who carries it on. Certain activities may be so generally carried on as to be regarded as customary. Thus, automobiles have come into such general use that their operation is a matter of common usage. This, together with the fact that the risk involved in the careful operation of a carefully maintained automobile is slight, is sufficient to prevent their operation from being an ultrahazardous activity. However, the use of an automotive vehicle of such size and weight as to be incapable of safe control and to be likely to crush water and gas mains under the surface of the highway is not as yet a usual means of transportation and, therefore, the use of such

an automobile is ultrahazardous. . . .' " (See 2 Witkin, Summary of Cal. Law (1960) pp. 1586-1590.)

■ The irrigation of farm land has been an ordinary and customary practice since the founding of this state, "a usage proper for the general benefit of the community." Millions of acres of farm land would be barely productive, if productive at all, were not water transported to it by canals, thence along crop rows and between trees. We conclude, therefore, the normal or customary irrigation of crops does not constitute an ultrahazardous undertaking nor carry with it the risk of absolute liability.

We are not confronted by the question, nor do we decide, whether strict liability attaches upon the impounding of waters for irrigation purposes whether by damming the flow of a natural stream or by collecting water in a reservoir. We confine our holding to the issue before us, liability arising from the usual and ordinary transportation of irrigation water by ditch or canal, and the normal and customary application of irrigation water to the land for usual irrigation purposes.

■ The trial court properly refused the proposed instructions on strict liability.

The judgment is reversed.

Conley, P. J., concurred.

A petition for a rehearing was denied May 31, 1966, and respondent's petition for a hearing by the Supreme Court was denied June 29, 1966.