[L.A. No. 30914. Aug. 21, 1978.]

RUDINE B. LeMONS, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

## COUNSEL

Harney & Moore, Ellis J. Horvitz and Irving H. Greines for Plaintiff and Appellant.

Fred B. Belanger and Schell & Delamer for Defendants and Respondents.

## OPINION

**BIRD, C. J.**—This is an appeal by Rudine B. LeMons from a judgment exonerating respondents, Dr. Paul Ward and the Regents of the University of California, of any liability for medical malpractice. This court must decide whether the trial court committed prejudicial error in

instructing the jury on the issue of contributory negligence when no evidence was introduced at trial to support such a charge.

## I

In September 1971, appellant was referred to Dr. Ward regarding an inflamed nasal cyst. Dr. Ward was a professor of surgery at the University of California at Los Angeles and chief of head and neck surgery at the university's hospital. In examining appellant, Dr. Ward discovered a second lump below her left ear. He diagnosed the lump as a "mixed" or benign tumor in appellant's parotid gland.[1]

Dr. Ward advised appellant that the parotid tumor was more serious than the nasal cyst and should be removed. Appellant was reluctant to have the parotid surgery (i.e., a parotidectomy), since she had been aware of the lump for at least 10 years and it had never bothered her. Nevertheless, Dr. Ward considered the lump potentially malignant and capable of spreading quickly, thereby endangering the nearby facial nerve. After discussing the nature and risks of an operation, Dr. Ward urged that surgery be undertaken within six months.

In November 1971, appellant visited a second surgeon, who confirmed Dr. Ward's opinion that the lump below her ear should be removed. On the basis of the advice of these two doctors, appellant decided to undergo surgery.

On November 16th, an operating team headed by Dr. Ward performed the parotidectomy. In cutting the tissue toward the parotid gland, Dr. Ward unintentionally severed appellant's facial nerve before identifying it. After discovering the severed nerve, Dr. Ward removed the cyst (which proved to be benign), sutured the nerve ends back together, and completed the operation.

Following the operation, the left side of appellant's face was completely paralyzed. Dr. Ward apologized and told appellant that the reconnected nerve might not begin to function for some time. He suggested physical therapy after her discharge from the hospital, but indicated that there was no proof that the therapy would be of any benefit.

Between December 6, 1971, and February 14, 1972, appellant undertook physical therapy and saw Dr. Ward four times. She regained little

---

[1] The parotid is one of the major saliva-secreting glands.

control of the muscles on the left side of her face. At her last visit with Dr. Ward, she felt "as if [she] had been dismissed," since the therapy was unsuccessful and Dr. Ward suggested no other course of treatment.

At the end of February, appellant began treatment with Dr. Alberto Marinacci, a neurologist and professor of neurology at the University of Southern California. Dr. Marinacci sought to help regenerate the damaged nerve by electrical stimulation. Appellant was also given injections of vitamin B-12.[2] By late 1974, appellant had recovered about 20 percent of the normal functions of the left side of her face. She had difficulty moving her facial muscles to express emotions or to eat. Her eye would not blink involuntarily which, in turn, caused damage to her cornea. She was unable to read for more than 15 minutes at a time or to continue her career as a painter. She filed her suit for damages on July 19, 1972.

The trial involved a predictable battle of experts. Appellant produced a forensic pathologist, a neurologist, two surgeons and an opthamologist who testified that an unintentional severing of the facial nerve before identifying it falls below the community standard of medical practice in performing parotidectomies. Respondents produced two specialists in head and neck surgery who, along with Dr. Ward, testified that an accidental cutting of the facial nerve is within the community standard. Dr. Ward testified that any surgeon who performs enough parotidecto-mies is bound to cut a nerve by mistake, and this time "my number came up."

In arguing to the jury, defense counsel emphasized that appellant's recovery was small because of her own conduct after surgery. In his initial statement to the jury, counsel stated that "[t]here should have been more improvement [in appellant's condition], however, Mrs. LeMons chose to leave the care of the doctors who were able to take care of her and . . . to go elsewhere." In closing argument, he asserted that after leaving Dr. Ward, appellant sought incompetent medical assistance. It was argued that appellant could have avoided her present condition by staying with Dr. Ward, who had plans "to attempt to restore to the fullest the ability of the facial nerve to work."

As requested by respondents, the trial judge instructed the jury on a patient's contributory negligence in failing to follow proper medical

[2]At trial, Dr. Marinacci recognized that some doctors do not believe that either technique assists in nerve regeneration.

advice[3] and on an injured party's duty to mitigate damages.[4] The jury rendered a nine-to-three verdict in favor of respondents.

## II

■ Appellant asserts that the trial court erred in charging the jury on the issue of a patient's contributory negligence. (See fn. 3, *ante.*) Former BAJI No. 6.28 relieved a negligent physician of malpractice liability for any injury resulting, in whole or in part, from a patient's negligent failure to follow a doctor's reasonable directions concerning that patient's care.

The doctrine of contributory negligence was still in effect at the time the present case was tried.[5] Contributory negligence was closely allied

[3]The trial judge gave former BAJI No. 6.28 (5th ed. 1969) page 194: "It is the duty of a patient to follow all reasonable and proper advice and instructions given him by his doctor regarding the patient's care, activities and treatment. A doctor is not liable for any injury proximately resulting from the negligent failure of the patient to do so. Such failure, however, does not relieve a doctor of responsibility for any injury resulting solely from any malpractice on his part."
All BAJI instructions referred to are from the fifth edition (1969) unless otherwise noted.

[4]BAJI No. 14.67 was also given: "It is the duty of a person who has been injured to use reasonable diligence in caring for his injuries and reasonable means to prevent their aggravation and to accomplish healing.
"When one does not use reasonable diligence to care for his injuries, and they are aggravated as a result of such failure, the liability, if any, of another whose act or omission was a proximate cause of the original injury, must be limited to the amount of damage that would have been suffered if the injured person himself had exercised the diligence required of him.
"[From the mere fact that a competent physician advised an injured person to submit to a course of treatment or operation we are not justified in inferring that the injured person was negligent or unreasonable in declining such treatment or operation. Other factors as they confronted the injured person must be considered in determining whether, although he refused to follow the physician's advice, he nevertheless exercised reasonable diligence in caring for himself and his injuries.]"

[5]The trial ended in December 1974, nearly four months before this court's decision in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. *Li* replaced the doctrine of contributory negligence with that of comparative negligence. As a result, BAJI No. 6.28 was revised to incorporate the change in the law effected by *Li:*
"It is the duty of a patient to follow all reasonable and proper advice and instructions given him by his doctor regarding the patient's care, activities and treatment.
"A doctor is not liable for any injury resulting solely from the negligent failure of the patient to follow such advice and instructions.
"However, if the negligence of the doctor is a [proximate] [legal] cause of injury to the patient, the contributory negligence of the patient, if any, in not following such advice and instructions, does not bar recovery by him against the doctor but the total amount to which he would otherwise be entitled shall be reduced in proportion to the negligence attributable to the patient." (BAJI No. 6.28 (6th ed. 1977) p. 200.)

and easily confused with the rule of mitigation of damages, on which the jury was also instructed. (Prosser, Law of Torts (4th ed. 1971) pp. 422-423; see *Clark* v. *Di Prima* (1966) 241 Cal.App.2d 823, 826 [51 Cal.Rptr. 49].) Both doctrines involved the plaintiff's duty to act reasonably. Contributory negligence was concerned with the plaintiff's negligence *before* being injured, while the mitigation rule was concerned with a lack of due care *after* the injury. (Prosser, Law of Torts, *supra*, p. 423.) The effect of contributory negligence was to bar all recovery by the plaintiff. In contrast, a plaintiff's failure to mitigate barred recovery of only the portion of damages which could have been avoided by ordinary care after the injury. (*Ibid.*)

In the present case, appellant contends that former BAJI No. 6.28 should not have been given since the record contains no evidence of any negligence on her part before the cutting of her facial nerve. ■ As a general rule, it is improper to give an instruction which lacks support in the evidence, even if the instruction correctly states the law. (E.g., *Solgaard* v. *Guy F. Atkinson Co.* (1971) 6 Cal.3d 361, 370 [99 Cal.Rptr. 29, 491 P.2d 821].) For example, a contributory negligence instruction cannot be given unless the record shows that some negligence on the part of the plaintiff proximately caused his or her injury. (*Witt* v. *Jackson* (1961) 57 Cal.2d 57, 68 [17 Cal.Rptr. 369, 366 P.2d 641]; *Western Salt Co.* v. *City of Newport Beach* (1969) 271 Cal.App.2d 397, 402 [76 Cal.Rptr. 322].) Thus, it is error in medical malpractice cases to give BAJI No. 6.28 in the absence of some evidence that the injured patient's acts or omissions were a proximate cause of the harm sustained. (*Barton* v. *Owen* (1977) 71 Cal.App.3d 484, 505-507 [139 Cal.Rptr. 494]; see *Preston* v. *Hubbell* (1948) 87 Cal.App.2d 53, 61-62 [196 P.2d 113]; *Maertins* v. *Kaiser Foundation Hospitals* (1958) 162 Cal.App.2d 661, 667 [328 P.2d 494, 75 A.L.R.2d 807].)

■ In the present case, there was no evidence that appellant's original injury resulted from any failure to follow medical instructions. Indeed, appellant could scarcely have contributed to her facial paralysis, which resulted from acts of the surgeon while appellant was unconscious on the operating table. Therefore, it was error for the trial court to include former BAJI No. 6.28 among the instructions given to the jury.

The next question presented is whether or not this error was prejudicial. (See Cal. Const., art. VI, § 13.) Prejudice appears "[w]here it seems probable that the jury's verdict may have been based on the erroneous instruction . . . ." (*Robinson* v. *Cable* (1961) 55 Cal.2d 425, 428 [11

Cal.Rptr. 377, 359 P.2d 929]; *Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353].) Whether "the probable effect of the instruction has been to mislead the jury . . . depends on all the circumstances of the case, including the evidence and the other instructions given." (*Butigan* v. *Yellow Cab Co.* (1958) 49 Cal.2d 652, 660-661 [320 P.2d 500, 65 A.L.R. 2d 1]; see also *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 72 [137 Cal.Rptr. 863, 562 P.2d 1022].)

■ While there is no precise formula for measuring the effect of an erroneous instruction (*Butigan* v. *Yellow Cab Co., supra,* 49 Cal.2d at p. 661), a number of factors are considered in measuring prejudice: (1) the degree of conflict in the evidence on critical issues (see *Robinson* v. *Cable, supra,* 55 Cal.2d at p. 428; *Maertins* v. *Kaiser Foundation Hospitals, supra,* 162 Cal.App.2d at p. 667); (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect (see *Clark* v. *Di Prima, supra,* 241 Cal.App.2d 823); (3) whether the jury requested a rereading of the erroneous instruction (see *Krouse* v. *Graham, supra,* 19 Cal.3d at p. 72) or of related evidence (see *Rimmele* v. *Northridge Hosp. Foundation* (1975) 46 Cal.App.3d 123, 131 [120 Cal.Rptr. 39]); (4) the closeness of the jury's verdict (see *Robinson* v. *Cable, supra,* 55 Cal.2d at p. 428); and (5) the effect of other instructions in remedying the error (compare *Wells* v. *Lloyd* (1942) 21 Cal.2d 452, 458-459 [132 P.2d 471] with *Krouse* v. *Graham, supra,* 19 Cal.3d at p. 73).

■ Reviewing the evidence in light of these factors establishes the probability that the erroneous instruction may have misled the jury. The evidence was sharply conflicting on the critical issue of whether Dr. Ward's conduct was within the community standard of medical practice. The jury may have found either that (1) Dr. Ward was not negligent or (2) he was negligent, but appellant's negligence barred her recovery under former BAJI No. 6.28. From the general verdict, it is impossible to tell which finding the jury made. In such circumstances, " 'this court should not speculate upon the basis of the verdict.' [Citations.]" (*Luque* v. *McLean* (1972) 8 Cal.3d 136, 147 [104 Cal.Rptr. 443, 501 P.2d 1163]; *Barton* v. *Owen, supra,* 71 Cal.App.3d at p. 507.)

In addition, defense counsel's argument to the jury increased the harmful potential of the improper instruction. Counsel strongly suggested that appellant was responsible for her lack of significant recovery because she sought "incompetent medical counsel" after abandoning Dr. Ward's treatment program, which would have restored the nerve's functioning

"to the fullest." Given this argument and the instruction on a patient's duty to follow proper medical direction, even a jury which understood that appellant's conduct did not cause her original injury could easily have confused the issues of contributory negligence and failure to mitigate.[6] (Cf. *Clark* v. *Di Prima, supra,* 241 Cal.App.2d at p. 826.) At least some jurors may have found for respondents on the misguided theory that appellant's actions after surgery contributed to her lack of greater recovery.

Even if only one of the nine jurors who supported the verdict voted on this basis, the effect was prejudicial. Here, as in *Robinson* v. *Cable, supra,* 55 Cal.2d at p. 428, "[t]he fact that only the bare number of jurors required to reach a verdict agreed upon the verdict for defendants lends further support to the probability that the erroneous instruction was the factor which tipped the scales in defendants' favor." (Accord *Blau* v. *City of Los Angeles* (1973) 32 Cal.App.3d 77, 88 [107 Cal.Rptr. 727].)

■ Respondents argue that even if the contributory negligence instruction should not have been given, the jury was not misled since the trial court instructed the jury in the language of BAJI No. 3.00.[7] This particular instruction was meant to be given when there was no issue of contributory negligence. (See BAJI No. 3.00 (5th ed. 1969) p. 49.)

While the instruction correctly stated the law to be applied in this case, it could not cure the error created by the giving of BAJI No. 6.28. For example, the jury may have viewed the two instructions as consistent by construing them to require a verdict for appellant if Dr. Ward's negligence caused the injury, *unless* appellant's failure to follow medical directions also contributed to her injured condition. If the jury took this

---

[6]As noted previously, the jury was instructed on both issues. (See fns. 3 and 4, *ante,* and related text.) The evidence of appellant's failure to mitigate was rather slight. It consisted mainly of her choosing to leave Dr. Ward and to be treated by Dr. Marinacci. There was testimony that some physicians doubted the effectiveness of the methods which Dr. Marinacci employed. Respondents' argument based on this evidence may well have misled the jury.

[7]BAJI No. 3.00: "A plaintiff who was injured as a proximate result of some negligent conduct on the part of a defendant is entitled to recover compensation for such injury from that defendant.

"Thus, the plaintiff is entitled to a verdict in this case if you find, in accordance with my instructions: 1. That defendant was negligent, and 2. That such negligence was a proximate cause of injury to the plaintiff."

view, they considered BAJI No. 6.28 fully effective, and the error in giving that instruction remained uncorrected.

On the other hand, if the jury regarded the two instructions as inconsistent, it cannot be assumed that the jury ignored the improper instruction and based its verdict solely on the correct one. (E.g., *Krouse* v. *Graham, supra,* 19 Cal.3d at p. 73.) " 'The jury are bound (and so instructed) to accept the court's instructions as correct statements of the law. . . . They are likely to be confused and misled by the conflicting statements, and it is not easy to determine which charge controlled their determination.' [Citation.]" (*Henderson* v. *Harnischfeger Corp., supra,* 12 Cal.3d at p. 673.)

More significantly, where two instructions are inconsistent, the more specific charge controls the general charge.[8] (*Cummings* v. *County of Los Angeles* (1961) 56 Cal.2d 258, 267 [14 Cal.Rptr. 668, 363 P.2d 900].) In the present case, the correct instruction was a general negligence instruction, while the erroneous charge applied the principle of contributory negligence in the specific context of medical malpractice. Therefore, if the jury regarded the two instructions as inconsistent, it is more likely that they followed the improper instruction.

The cases cited by respondents in urging that the erroneous instruction was not prejudicial are inapposite. The cited cases involve challenges to isolated instructions which were not erroneous but merely incomplete, and whose omissions were corrected in the instructions as a whole. (*Hurtado* v. *San Diego Electric Ry. Co.* (1928) 204 Cal. 446, 451 [268 P. 620]; *James* v. *Frazee* (1930) 209 Cal. 456 [288 P. 784]; see *Jentick* v. *Pacific Gas and Elec. Co.* (1941) 18 Cal.2d 117, 121 [114 P.2d 343]; see also *People* ex rel. *Dept. Pub. Wks.* v. *Jones* (1963) 218 Cal.App.2d 747, 751-752 [32 Cal.Rptr. 344].) In the present case, BAJI No. 6.28 was not merely incomplete. It was entirely improper to give, and may have misled the jury. Since this error was prejudicial, the judgment is reversed.[9]

---

[8] The reason for this rule is well expressed in *Nickell* v. *Rosenfield* (1927) 82 Cal.App. 369, 377 [255 P. 760]: "Every trial judge knows from experience that many general instructions are quite puzzling to the average juror . . .; but when the court takes up the particular situation involved, and bases a charge thereon by applying the facts to the law, instantly the jury becomes directly interested."

[9] In view of this conclusion, it is unnecessary to reach appellant's other contentions.

Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Tamura, J.,* concurred.

**CLARK, J.,** Dissenting.—Agreeing with Justice Kaus who found no prejudicial error occurred at trial, I dissent.

---

*Assigned by the Chairperson of the Judicial Council.