Filed 7/9/14  Kim v. County of San Bernardino CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| HYANG KIM,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>                        v.<br><br>COUNTY OF SAN BERNARDINO,<br><br>    Defendant, Cross-complainant and Appellant. | G049332<br><br>(Super. Ct. No. CIVVS703203)<br><br>O P I N I O N |

Appeal from judgment of the Superior Court of San Bernardino County, John P. Vander Feer, Judge.  Affirmed.

Jean-Rene Basle, County Counsel and Matthew J. Marnell, Deputy County Counsel for Defendant, Cross-complainant and Appellant.

Law Offices of Kim L. Bensen, Eric W. Bladh; Pollak Vida & Fisher, Michael M. Pollak and Anna L. Birenbaum for Plaintiff, Cross-defendant and Respondent.

\*          \*          \*

Appellant County of San Bernardino (County) contends the trial court prejudicially erred in instructing the jury. We disagree and affirm.

## I

## FACTS

An accident involving a County ambulance and a car occurred on January 14, 2007. Plaintiff's car went off the side of the road going down the mountain from Wrightwood.

*The Ambulance*

Firefighter/paramedic Nathan Armstrong saw heavy traffic in both directions when he went up to a ski resort in Wrightwood to pick up a patient. He explained: "We respond Code 3 to most — you know, most, if not I'd say 99 percent, of calls with lights and sirens to get there expediently."

With regard to the mode of transport, there were two options, by ground or by air ambulance helicopter. The decision was made to take the patient by ambulance, and the duration of the transport was estimated to be one hour.

After the pick-up, Armstrong was in the back of the ambulance with the patient, a 15-year-old boy in good physical condition who was injured while skiing. The boy had a mid-shaft fracture of the femur on which a traction splint had been applied. Armstrong explained the purpose of the splint: "[W]hen . . . that bone breaks, those muscles are really strong and pull the bone ends past each other. So we apply that traction splint so it effectively pulls the leg back to its regular length to relieve pain and decrease the possibility of any internal injury." Because the patient was already in the splint when Armstrong first saw him, Armstrong was unable to observe the injured leg. The patient's pulse in his foot remained the same from when the boy was first placed in the ambulance, and Armstrong never reported observing any signs of internal bleeding during the transport.

2

Armstrong was the person responsible for designating which code was to be used when they left Wrightwood. Someone circled "Code 2" on a County transport form for the departure from Wrightwood, but Armstrong testified: "[I]t was as we were pulling out of the parking lot, remembering how heavy the traffic was getting there I told [the driver] if he needed to go Code 3 to get through all of the traffic to go ahead." He explained his reasoning: "[T]he patient's condition is serious, potentially even more serious than I can tell, and that it was necessary to get him to the hospital as quickly as possible."

The ambulance driver, Julio Ramirez, testified the reason he was going Code 3 to get through traffic was because the patient had a fractured femur bone. He said he turned on the lights and siren and three cars pulled over to the side of the road until he came up behind the Kim vehicle.

Ramirez admitted to being surprised at the lack of maneuverability of the ambulance. He also testified he crashed into the rear of the other vehicle because he was driving too fast and following too closely.

*Firefighter Most Knowledgeable*

Jeffrey Birchfield was designated the person most knowledgeable about the training and supervision of ambulance driver Ramirez by the County in its discovery responses. Birchfield testified ambulance drivers are required to maintain a safe distance from the vehicle ahead of it. Drivers are trained to never assume another driver will yield the right-of-way.

With regard to lights and sirens, Birchfield was asked about situations when the driver cannot get through traffic due to congestion. He testified: "They're directed to shut off their siren and lights so they don't force someone to do an illegal maneuver," in order to protect public safety. Birchfield explained: "When they're at congested traffic at an intersection some people tend to panic. If we have our lights and sirens going and

3

they have nowhere to go, they may panic and go through a red light as traffic is going through a green light and cause them to get into a collision." Birchfield also explained that some driver's do not hear sirens right away because of the travel of sound waves in the topography of the mountains.

*The Other Vehicle*

Hyang Kim had been driving down the mountain from Wrightwood for about 30 to 40 minutes along "the curvy road" when he realized there was an ambulance behind him. He was traveling "20 – 25" miles per hour. He testified about what he thought at that moment: "I just remembered that I – I had to pull over if I hear ambulance."

Kim pulled his car over to the right and stopped. At the spot where Kim stopped, there was not enough room for him to pull completely outside the lane of traffic. To Kim's right, he saw "the mountains." He said he stopped his car when he first heard the ambulance.

Kim heard screeching tires. Two to three seconds after Kim stopped his car, he felt an impact from his rear. Kim described what happened next: "My car went down through the slope. It was like a plane was landing." Both air bags deployed. Kim was in pain and bleeding, and his wife, Yuji Piao, lost consciousness.

When his car came to a stop, Kim was able to exit through the car door, and his son, who was about 11 years old at the time, got out from the back door. The paramedics got his wife out of the car, put something on her neck and "took her away."

Another driver who was traveling in the opposite direction first saw the ambulance when he was about one-eighth of a mile away from it. The other driver stopped in the lane of travel, not off the roadway. He observed the ambulance was "maybe within 5 feet or so" behind the SUV in front of it.

4

*Special Verdict*

The jury answered questions on the special verdict form stating Ramirez's negligence was a substantial factor in causing harm to the Kims. The jury also found that Kim's negligence was a substantial factor in causing the harm. They divided the percentage of responsibility as 78 percent to Ramirez and 22 percent to Kim. The jury's award of $594,053 to Kim and $111,749 to Yuji Piao were reduced by 22 percent.

II

DISCUSSION

*Basic Speed Law Instruction*

The County contends the trial court erred when it instructed the jury with CACI No. 706 instead of CACI No. 730. The instruction that was given did not state that because the County ambulance was being driven under an authorized emergency, using lights and siren, it was exempt from following the basic speed law.

The basic speed law is set forth in Vehicle Code section 22350: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

Exemptions of authorized emergency vehicles are set forth in Vehicle Code section 21055: "The driver of an authorized emergency vehicle is exempt from Chapter 2 (commencing with Section 21350), Chapter 3 (commencing with Section 21650), Chapter 4 (commencing with Section 21800), Chapter 5 (commencing with Section 21950), Chapter 6 (commencing with 22100), Chapter 7 (commencing with Section 22348), Chapter 8 (commencing with Section 22450), Chapter 9 (commencing with Section 22500), and Chapter 10 (commencing with Section 22650) of this division, and Article 3 (commencing with Section 38305) and Article 4 (commencing with Section 38312) of Chapter 5 of Division 16.5, under all of the following conditions: [¶] . . . [¶]

5

(b) If the driver of the vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to other drivers and pedestrians. [¶] A siren shall not be sounded by an authorized emergency vehicle except when required under this section."

The scope of Vehicle Code section 21055 is placed in perspective by Vehicle Code section 21056: "Section 21055 does not relieve the driver of a vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor protect him from the consequences of an arbitrary exercise of the privileges granted in that section."

"The effect of Vehicle Code sections 21055 and 21056 is: where the driver of an authorized emergency vehicle is engaged in a specified emergency function he may violate certain rules of the road, such as speed and right of way laws, if he activates his red light and where necessary his siren in order to alert other users of the road to the situation. In such circumstances the driver may not be held to be negligent solely upon the violation of specified rules of the road, but may be held to be negligent if he fails to exercise due regard for the safety of others under the circumstances. [Citation.]" (*City of Sacramento v. Superior Court* (1982) 131 Cal.App.3d 395, 402-403.)

At the center of the County's contention is that the court allegedly erred when it did not include reference to the basic speed law found in Vehicle Code section 22350 when it gave the following instruction to the jury: "The Defendant County of San Bernardino claims that [Ramirez] was not required to comply with Vehicle Code Sections 21650, 21750, 21751 and 21752 because he was operating an authorized emergency vehicle and was responding to an emergency at the time of the accident. To establish that [Ramirez] was not required to comply with Vehicle Code Sections 21650, 21750, 21751, and 21752, the Defendant must prove all of the following: [¶] 1. That [Ramirez] was operating an authorized emergency vehicle; [¶] 2. That [Ramirez] was responding to an emergency situation at the time of the accident; And [¶] 3. That [Ramirez] sounded a

6

siren when reasonably necessary and displayed front red warning lights. . . .  [¶] . . . However, even if you decide that defendant proved all of these things, you may find [Ramirez] negligent if he failed to operate his vehicle with reasonable care, taking into account the emergency situation."

The instruction the County says it unsuccessfully requested is found in CACI No. 730, which reads as follows:  "[*Name of defendant*] claims that [*name of public employee*] was not required to comply with Vehicle Code section [*insert section number*] because [he/she] was operating an authorized emergency vehicle and was responding to an emergency at the time of the accident.  To establish that [*name of public employee*] was not required to comply with section [*insert section number*], [*name of defendant*] must prove all of the following:  [¶] 1. That [*name of public employee*] was operating an authorized emergency vehicle; [¶] 2. That [*name of public employee*] was responding to an emergency situation at the time of the accident; and [¶] 3. That [*name of public employee*] sounded a siren when reasonably necessary and displayed front red warning lights.  [¶] If you decide that [*name of defendant*] proved all of these things, then you cannot find it negligent for a violation of section [*insert section number*].  However, even if you decide that [*name of defendant*] proved all of these things, you may find it negligent if [*name of public employee*] failed to operate [his/her] vehicle with reasonable care, taking into account the emergency situation."

"A judgment may not be reversed on appeal, even for error involving 'misdirection of the jury,' unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.'  (Cal. Const., art. VI, § 13.)  When the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached.  [Citation.]"  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.)  Put another way, instructional error in a civil case

7

requires reversal "'where it seems probable' that the error 'prejudicially affected the verdict.' [Citations.]" (*Id.* at p. 580.)

Under these circumstances we find in this record, we cannot conclude, even if the trial court did err, and we do not make that finding, that any such error amounted to a miscarriage of justice because there is overwhelming evidence to support the verdict. There was evidence some drivers do not hear sirens on the road where the accident happened and that Kim pulled to his right as soon as he heard the siren. Ramirez admitted to being surprised at the lack of maneuverability of the ambulance, and that he was driving too fast and too closely to the Kim vehicle which caused him to crash into it. Also, a witness testified the ambulance was traveling within five feet behind Kim's vehicle.

Considering the state of the evidence and the other instructions given by the trial court, we cannot find any indication the jury was mislead by what the County contends were erroneous jury instructions. (*LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 876.)

Even if the County's favored instruction had been given by the court, it would have included the language: "However, even if you decide that the County proved all of these things, you may find it negligent if Ramirez failed to operate his vehicle with reasonable care, taking into account the emergency situation." From the totality of the circumstances, we must conclude the result would have been the same even had the County successfully prevailed upon the trial court to instruct the way it preferred.

*Special Instruction No. 7*

The County argues: "The trial court also committed prejudicial error in refusing defense special jury instruction 7 on the duties of the driver in front of an ambulance." However, the County has not given us a citation to the record for what it now refers to as special instruction No. 7.

8

In its brief, without attribution to the record, the County quotes special instruction No. 7 as stating: "Hyang Kim may be found to have violated a statutory provision requiring that the right-of-way be ceded to an emergency vehicle emitting the requisite warning signals based on his or her imputed awareness of such signals, that is, that such a violation may occur *not only where Hyang Kim actually observed* or heard the required warning signal, but where, under the circumstances, *he or she should have observed or heard the same.*"

We tried to find special instruction No. 7 in the clerk's transcript on appeal and found the following special instruction No. 7 attached as an exhibit to the County's designation of record on appeal: "Special Instruction No. 7: [¶] NOTICE TO DRIVER REQUIRED TO YIELD THE RIGHT OF WAY [¶] A driver of a motor vehicle required to give the Right of Way to an emergency vehicle provided by [statute], must be given: [¶] 1. Reasonable notice of the need to yield the Right of Way; and [¶] 2. Reasonable opportunity to stop or otherwise yield the Right of Way. [¶] Upon such a showing, if you find that Hyang Kim knew, or in the exercise of ordinary prudence should have known of the approach of an emergency vehicle in time to have allowed said Right of Way, and that such failure, refusal, and neglect to allow such Right of Way was a substantial factor resulting in the collision between the emergency vehicle and the vehicle driven by Hyang Kim, then you must find that Hyang Kim was negligent."

After hearing argument about special instruction No. 7, the trial court ruled: "I'm not going to give that one. I think it's covered by some of the other instructions in the specific Vehicle Code sections versus relying on a case. I'd rather have the Vehicle Code section read than that."

With regard to record citations, the County had the obligation to cite "'to the volume and *page number* of the record where the matter appears.'" (*In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 366, fn. 4; California Rules of Court, rule 8.204(a)(1)(C).) The state of the record before us is so unclear, we are unable to even

9

ascertain just what special instruction No. 7 stated. Consequently, any argument regarding special instruction No. 7 is waived for failure to cite to the record. (*Roden v. AmericsourceBergen Corp.* (2010) 186 Cal.App.4th 620, 634.)

Nonetheless, even assuming either the special instruction No. 7 the County quoted in its brief on appeal or the special instruction No. 7 the County attached to its request for preparation of the clerk's transcript for appeal was the same one the trial court denied, the County would not prevail because it has not demonstrated prejudice as a result of its contention of error. The court instructed the jury regarding relevant Vehicle Code sections. No judgment shall be reversed due to error in instructing a jury unless prejudice is shown. (Code of Civ. Proc., § 475.) Here, the best we can glean from the County's argument is that it suffered prejudice because, had special instruction No. 7 been given, the jury might have decided Kim should have pulled to the side of the road sooner. We do not find that argument persuasive.

The jury heard significant evidence about the conditions under which Kim pulled over, including evidence the ambulance was driving within five feet of Kim's car with lights and siren, certainly an indication Ramirez wanted Kim to yield to him. There was also evidence people tend to panic when confronted with an emergency vehicle. The jury was instructed that the "driver of every other vehicle shall yield the right-of-way and shall immediately drive to the right-hand edge or curb of the highway . . . until the authorized emergency vehicle has passed." The jury was also instructed to give a witness's opinion whatever weight it thought it deserved, and Kim testified he pulled over as soon as he was able to safely stop. Apparently the jury believed him to some extent, but not completely since Kim was found to be 22 percent responsible.

*Limiting Instruction*

The County next contends the trial court erred when it gave the following special instruction, which it states, without a citation to the record, was requested by

10

Kim: "Hyang Kim has testified that he has not had any surgeries because he cannot afford them. This testimony has been admitted for the limited purpose of explaining the reason for not having the surgeries. You may not consider this evidence for the purpose of creating sympathy for Hyang Kim."

Kim testified on direct examination that he talked with Dr. Schiffman about neck and knee surgeries, and that he told the doctor he wanted to have those surgeries, but he testified he did not have them because: "I don't have money." The County asked an orthopedic surgeon about one of the surgeries. The surgeon responded: "I told him that I wouldn't recommend that," explaining his reason was Kim's long-standing spinal stenosis.

There ensued much discussion, both on and off the court reporters record, about whether Kim's purported reason for not having the surgery was false because of Yuji Piao's discussion of insurance in her deposition wherein she testified she purchased insurance after the accident. The court asked the County if it had any more information than Yuji Piao's testimony about insurance. The court and counsel discussed the lack of an insurance policy, the collateral source rule and whether anything was actually paid under an insurance policy. The court told the County's lawyer he would be permitted to question Kim about whether or not he had insurance which covered the recommended surgeries.

Additionally, the court stated: "[T]here's a motion to strike testimony of Mr. Kim that the reason he hasn't obtained surgery, I guess, arthroscopic for his knee or other more invasive surgery for his neck, is because he can't afford it. There's been a motion to strike brought by [the County]." The court noted that no objection was made at the time of the testimony, and denied the motion to strike, but stated it would give a limiting instruction. Plaintiff's counsel said: "I believe that's the proper path to take, your Honor." The court directed the County to prepare the instruction.

11

In its brief, once again without citation to the record to support the statement, the County argues it was prejudiced by the court's limiting instruction, because the evidence of Kim's poverty was elevated "above other evidence in the minds of the jury."

A cardinal rule of appellate review is that "a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) Nonetheless, the County requests just the opposite when it contends: "So, this prejudicial jury instruction mandates reversal unless [plaintiffs] show that actual prejudice did not result." Under the circumstances contained in the record before us, we cannot conclude the County was prejudiced.

III

DISPOSITION

The judgment is affirmed. Kim is entitled to his costs on appeal.

MOORE, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

IKOLA, J.

12