[No. D035974. Fourth Dist., Div. One. Jan. 7, 2002.]

GILBERT SANDOVAL, a Minor, etc., et al., Plaintiffs and Appellants, v. BANK OF AMERICA NT & SA, Defendant and Respondent.

**COUNSEL**

William Turley & Associates and William Turley for Plaintiffs and Appellants.

Gregory S. Spencer; Hines & Thomas, Franklin Dean Thomas and James F. Pokorny for Defendant and Respondent.

**OPINION**

**KREMER, P. J.**—Gilberto Sandoval, Carolina Sandoval, Daniel Sandoval and Samuel Sandoval (together Sandoval), by and through their guardian ad litem Dana Sandoval, appeal a judgment after jury trial favoring defendant Bank of America NT & SA (Bank) on Sandoval's wrongful death complaint for premises liability negligence. Sandoval contends that with respect to the test of the legal causation element of negligence, the court gave the jury erroneous instructions, a special verdict form containing an erroneous question, and an erroneous answer to the jurors' written inquiry about such question during deliberation. Concluding the court's answer to the jury's inquiry during deliberation was prejudicially erroneous as not comporting with case law bearing on causation, we reverse the judgment.

## I

### INTRODUCTION

While Sandoval's decedent was walking from the parking lot of the Bank's North Park branch toward the branch's office, an unknown man ran up to him, grabbed his briefcase and tried to pull the briefcase away from him. Sandoval's decedent resisted and a struggle ensued. The assailant then shot Sandoval's decedent several times. The assailant fled with the briefcase and was never apprehended. Sandoval's decedent collapsed and later died.

 ▀▀ ▀ Sandoval sued the Bank, alleging the Bank's negligence caused the death of Sandoval's decedent. (*Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 123-124 [211 Cal.Rptr. 356, 695 P.2d 653] (*Isaacs*); *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 426 [20 Cal.Rptr.2d 97] (*Nola M.*).)[1] Sandoval proceeded on the theory that despite numerous prior robberies on or adjacent to its premises, the Bank failed to provide adequate security at the time Sandoval's decedent was attacked. At the time of the shooting, the Bank had one unarmed security guard inside the branch office. Sandoval's security expert opined at trial that if the Bank had stationed two armed off-duty police officers in the parking lot near the entranceway to the Bank, it would have prevented the crime against Sandoval's decedent.

The trial court gave the jury various instructions on the elements of negligence including legal causation.[2] The court submitted to the jury a special verdict form proposed by the Bank.[3] During deliberation, the jury sent the court a written inquiry about question No. 3 on the special verdict form: "Regarding question 3, we have a question as to the meaning and/or intent of the use of the word <u>would</u>. In this question, we are assuming the use of the word <u>would</u> is an absolute. Meaning, if B of A had not been neglegent [*sic*], [decedent] would not have been assaulted, would not have been shot, would not have been killed. We further assume <u>prevent</u> means to

---

[1]In *Isaacs, supra,* 38 Cal.3d 112, the Supreme Court observed: "It is well settled that an owner of land has a duty 'to take affirmative action to control the wrongful acts of third persons which threaten invitees where the [owner] has reasonable cause to anticipate such acts and the probability of injury resulting therefrom.' [Citation.] This duty is premised on the special relationship between the landowner and the invitee [citation] and the general duty to exercise reasonable care in the management of one's property [citations]." (*Id.* at pp. 123-124, fn. omitted.)

In *Nola M., supra,* 16 Cal.App.4th 421, the appellate court observed: "If the place or character of the landowner's business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it and to use such means of protection as are available to afford reasonable protection." (*Id.* at p. 426.)

[2]Sandoval challenges two of those jury instructions: (1) "Plaintiff is seeking damages based upon a claim of negligence. Plaintiff has the burden of proving by a preponderance of the evidence all of the facts necessary to establish: One, that defendant Bank of America was negligent; two, that the death of [decedent] would have been prevented if Bank of America was not negligent"; and (2) "The law defines cause in its own particular way. In this case, the negligence of the defendant, if any negligence is proven, is not a legal cause of any damage sustained by the plaintiff, unless plaintiffs prove by a preponderance of the evidence that the criminal assault would have been prevented if the defendant had not been negligent."

[3]Sandoval challenges the special verdict form's question No. 3: "If the defendant had not been negligent in the management of the premises, would the criminal assault on [decedent] have been prevented."

totally eliminate the assualt [*sic*], shooting and death. Is this the meaning of this question[?]" After discussion with counsel, the court gave the jury a written reply simply saying "yes."

Ultimately, the jury returned a special verdict finding that (1) the property where Sandoval's decedent was assaulted, robbed and/or killed was in the Bank's ownership, possession and/or control; (2) the Bank was negligent in the management of the premises; but (3) the criminal assault on Sandoval's decedent would not have been prevented even if the Bank had acted non-negligently in managing the premises. Based upon the special verdict, the court entered judgment favoring the Bank.

 On appeal, Sandoval contends the challenged instructions, question No. 3 on the special verdict form and the trial court's answer to the jury's inquiry about such question erroneously indicated that the test of the causation element of the tort of negligence was "absolute" rather than the "substantial factor" standard. We conclude that instead of dispelling the jurors' apparent confusion about the proper test of causation, the court's answer to the jury's inquiry about question No. 3 on the special verdict form served only to reinforce such confusion.[4]

## II

### THE LAW

 In *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763 [107 Cal.Rptr.2d 617, 23 P.3d 1143] (*Saelzler*), a case decided while this appeal was pending, a plaintiff injured on the defendants' premises in a criminal assault by unknown assailants sought to recover damages from the defendants on the theory that the defendants breached their duty of care to her. (*Id.* at p. 772.) The Supreme Court stated that "to prevail in such a case, the plaintiff must show that the defendant owed her a legal duty of care, the defendant breached that duty, *and the breach was a proximate or legal cause of her injury*." (*Ibid.*) The Supreme Court observed: "Actual causation is an entirely separate and independent element of the tort of negligence." (*Id.* at p. 778.) Thus, the Supreme Court stated that even if "the defendant owed and breached a duty of care to the plaintiff," the plaintiff could not prevail without showing that "the breach bore a causal connection to her

---

[4]In light of our conclusion, we need not consider Sandoval's claims of asserted errors involving evidence, instructions and the special verdict form's questions bearing on the matter of Sandoval's decedent's alleged comparative negligence, an issue not reached by the jurors once they found the Bank's negligence was not a cause of the decedent's harm.

injury." (*Id.* at p. 773.) The Supreme Court also noted: "No matter how inexcusable a defendant's act or omission might appear, the plaintiff must nonetheless show the act or omission caused, or substantially contributed to, her injury. Otherwise, defendants might be held liable for conduct which actually caused no harm, contrary to the recognized policy against making landowners the *insurer* of the absolute safety of anyone entering their premises." (*Id.* at p. 780.)

In *Saelzler, supra,* 25 Cal.4th 763, in framing the issue of causation, the Supreme Court stated: "Was defendants' possible breach of duty a substantial factor in causing plaintiff's injuries?" (*Id.* at p. 772.) After discussing the "analyses" in cases it characterized as "close on point" and "instructive" (*id.* at p. 773), the Supreme Court concluded that despite the "speculative opinion" of her expert, plaintiff Saelzler "cannot show that defendants' failure to provide increased daytime security at each entrance gate or functioning locked gates was a substantial factor in causing her injuries. [Citations.] Put another way, she is unable to prove it was 'more probable than not' that additional security precautions would have prevented the attack." (*Id.* at p. 776, citing *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 488 [50 Cal.Rptr.2d 785] (*Leslie G.*);[5] Prosser & Keeton, Torts (5th ed. 1984) § 41, p. 269 [plaintiff must show it more likely than not defendant's conduct was cause in fact of the result; "mere possibility of such causation is not enough"].)

■ "The first element of legal cause is *cause in fact*: i.e., it is necessary to show that the defendant's negligence contributed in some way to the plaintiff's injury, so that 'but for' the defendant's negligence the injury would not have been sustained. If the accident would have happened anyway, whether the defendant was negligent or not, then his negligence was not a cause in fact, and of course cannot be the legal or responsible cause. The 'but for' rule has traditionally been applied to determine cause in fact. [Citations.] [¶] The Restatement formula uses the term '*substantial factor*' 'to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause.' [Citation.] And 'the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.'" (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 968, pp. 358-359.) The Supreme Court has observed that

---

[5]In *Leslie G., supra,* 43 Cal.App.4th 472, the appellate court concluded that a "tenant's negligence action against her landlord for injuries resulting from the criminal assault of a third person must be supported by evidence establishing that it was more probable than not that, but for the landlord's negligence, the assault would not have occurred." (*Id.* at p. 488; cited with approval in *Saelzler, supra,* 25 Cal.4th at p. 775.)

the " 'substantial factor' test subsumes the 'but for' test. 'If the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries.' " (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052 [1 Cal.Rptr.2d 913, 819 P.2d 872]; accord, *Nola M.*, *supra*, 16 Cal.App.4th at p. 439; *Lopez v. McDonald's Corp.* (1987) 193 Cal.App.3d 495, 515 [238 Cal.Rptr. 436].[6])

"In California, the causation element of negligence is satisfied when the plaintiff establishes (1) that the defendant's breach of duty (his negligent act or omission) was a substantial factor in bringing about the plaintiff's harm and (2) that there is no rule of law relieving the defendant of liability." (*Leslie G.*, *supra*, 43 Cal.App.4th at p. 481; accord, *Rosh v. Cave Imaging Systems, Inc.* (1994) 26 Cal.App.4th 1225, 1235 [32 Cal.Rptr.2d 136]; *Nola M.*, *supra*, 16 Cal.App.4th at p. 427.) Here, no such rule of law relieved the Bank of liability. Instead, as observed by the appellate court in *Leslie G.*: "In the context of this case, the causation analysis is unaffected by the fact that the assailant's conduct was criminal and not merely negligent. Stated in traditional terms, the assailant's attack is not a superseding cause and it does not, in itself, relieve the defendant of liability. As our Supreme Court has explained, if the likelihood that a third person may act in a particular manner is ' "one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." ' " (*Leslie G.*, at p. 481; accord, *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 812 [205 Cal.Rptr. 842, 685 P.2d 1193] ["intervening criminal conduct cannot absolve the defendant of liability where as here the plaintiff alleges that defendants maintained the property in such a way so as to increase the risk of criminal activity"]; *Nola M.*, at p. 427 ["Stated in traditional terms, the assailant's attack is not a superseding cause and it does not relieve [defendant] of liability."].)

In sum, at trial Sandoval was required to show by a preponderance of the evidence that the Bank's alleged negligence "was an actual, legal cause" of Sandoval's decedent's injuries. (*Saelzler*, *supra*, 25 Cal.4th at p. 769.) To

---

[6]In *Lopez v. McDonald's Corp.*, *supra*, 193 Cal.App.3d 495, we stated: "McDonald's negligent conduct is not a substantial factor in bringing about plaintiffs' injuries if their injuries would have been sustained even if it had provided the unarmed, uniformed, licensed security guard. [Citation.] More precisely, '. . . where the actor's tortious conduct consists in a failure to take some precautions which are required for the protection of another's person or land or chattels[,] . . . if the same harm, both in character and extent, would have been sustained even had the actor taken the required precautions, his failure to do so is not even a perceptible factor in bringing it about and cannot be a substantial factor in producing it.' " (*Id.* at p. 515.)

"demonstrate" such "actual or legal causation," Sandoval was required to show that the Bank's negligence "was a 'substantial factor' in bringing about the injury." (*Id.* at p. 778.) Further, to demonstrate that the Bank's negligence constituted a substantial factor in bringing about the harm, Sandoval was required to show "it was 'more probable than not' that additional security precautions would have prevented the attack." (*Id.* at p. 776; *Leslie G.*, *supra*, 43 Cal.App.4th at p. 488.)

## III

## DISCUSSION

Preliminarily, we note that Sandoval has contended the court's assertedly erroneous use of the concept of "prevention" in the challenged jury instructions and question No. 3 of the special verdict form confused the jury by directly conflicting with the substantial factor test of causation properly communicated to the jury under another instruction. However, for purposes of this appeal, we deem the challenged instructions and question No. 3 on the special verdict form not to have been improper. The concept of prevention used in the challenged instructions and question No. 3 on the special verdict form appears consistent with ample case law.[7] Further, the court properly instructed the jury on the elements of negligence generally, the substantial factor test of causation, the burden of proof standard of preponderance of the evidence, and concurrent causes.

---

[7]*Saelzler*, *supra*, 25 Cal.4th at pages 767, 776 (plaintiff presented insufficient evidence to show that defendants' asserted breach of duty "actually caused her injuries," to wit, that her assailants "would not have succeeded in assaulting her if defendants had provided additional security precautions"; and plaintiff must "prove it was 'more probable than not' that additional security precautions would have prevented the attack").

*Leslie G.*, *supra*, 43 Cal.App.4th at page 488 (plaintiff must prove "it was more probable than not that, but for the landlord's negligence, the assault would not have occurred").

*Nola M.*, *supra*, 16 Cal.App.4th at pages 436-437 ("When an injury can be prevented by a lock or a fence or a chain across a driveway or some other physical device, a landowner's failure to erect an appropriate barrier can be the legal cause of an injury inflicted by the negligent or criminal act of a third person," but "where, as here, we are presented with an open area which could be fully protected, if at all, only by a Berlin Wall, we do not believe a landowner is the cause of a physical assault it could not reasonably have prevented").

*Noble v. Los Angeles Dodgers, Inc.* (1985) 168 Cal.App.3d 912, 917 [214 Cal.Rptr. 395] (the question "to be determined by the jury is what reasonable steps could have been taken to prevent plaintiff's injury" and the "objective is to determine whether a particular defendant should, under the circumstances, be held liable for a plaintiff's injury because of a failure to prevent the criminal actions of a third party").

*Lopez v. McDonald's Corp.*, *supra*, 193 Cal.App.3d at page 516 ("noticeably absent from [security expert's] testimony is the opinion that the specific use of an unarmed, uniformed, licensed security guard would have acted as a deterrent and prevented the event").

Nonetheless, on this record the judgment must be reversed. As noted, the jury found the Bank was negligent in the management of its premises. Such finding suggests the jurors believed that "by reason of the prior criminal assaults and incidents" on such premises, the Bank "owed a duty to provide a reasonable degree of security to persons entering them" and breached such duty. (*Saelzler, supra*, 25 Cal.4th at p. 775.) Although a properly instructed jury's ensuing finding that the Bank's "failure to provide increased security despite the foreseeability of assaults" did not "actually cause[]" Sandoval's decedent's injuries might have been proper (*id.* at p. 777), the record indicates the jurors were confused by the applicable test of causation as manifested by their inquiry to the court during deliberation about the meaning of certain language in question No. 3 on the special verdict form. However, despite having given other proper instructions bearing on the causation element of negligence, the court prejudicially erred in not correctly explaining causation in replying to the jury's inquiry.

As discussed, at trial Sandoval was required to show by a preponderance of the evidence that the Bank's alleged negligence was an actual, legal cause of Sandoval's decedent's injury; to demonstrate such actual or legal causation, Sandoval was required to show that the Bank's negligence was a substantial factor in bringing about the injury; and to demonstrate that the Bank's negligence constituted a substantial factor in bringing about the harm, Sandoval was required to show it was more probable than not that additional security precautions would have prevented the attack. (*Saelzler, supra*, 25 Cal.4th at pp. 769, 776, 778; *Leslie G., supra*, 43 Cal.App.4th at p. 488.) However, in answering the jury's inquiry about the special verdict form's question No. 3's use of the word "would," the court did not convey to the jurors that the law required Sandoval to show only that the security measures proposed by Sandoval's security expert would more likely than not have prevented the attack on Sandoval's decedent. Instead, by simply replying "yes" to the jury's inquiry, the court told the jury that the law required Sandoval to show that such security measures would absolutely have prevented an attack.

In sum, the jury should have been told that if a preponderance of the evidence showed it was more likely than not that proper security by the Bank would have prevented the harm to Sandoval's decedent, the Bank's negligence in not providing such security would constitute a substantial factor in bringing about Sandoval's harm and thus form the requisite cause in fact of such harm. (*Saelzler, supra*, 25 Cal.4th at pp. 769, 776, 778; *Leslie G., supra*,

43 Cal.App.4th at p. 488.) ▪ ▪ However, instead of telling the jury that, for purposes of imposing liability on the Bank, the test of causation required that it be more likely than not that the criminal assault on Sandoval's decedent would have been prevented absent the Bank's negligence, the court effectively contradicted its proper instruction on the substantial factor standard and left the jury in its state of confusion. (*LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 877-878 [148 Cal.Rptr. 355, 582 P.2d 946] (*LeMons*).)[8]

Finally, the court's erroneous answer to the jury's inquiry during deliberation was prejudicial to plaintiff Sandoval. (*LeMons, supra,* 21 Cal.3d at pp. 875-878; *Krouse, supra,* 19 Cal.3d at pp. 72-73; *Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125, 152-153 [32 Cal.Rptr.2d 643] (*Scott*); *McLaughlin, supra,* 23 Cal.App.4th at pp. 1158-1159.) Among the factors properly considered in assessing the prejudice of the court's error are the jury's request for "clarification" of question No. 3 on the special verdict form, the "effect of other instructions in remedying the error" and "the closeness of the jury's verdict." (*Scott,* at p. 152, citing *LeMons,* at p. 876.) Here, the jury's inquiry reflected the jurors' confusion on the test of the causation element of the tort of negligence. (*LeMons,* at p. 876; *Scott,* at p. 152.) However, the "jurors' confusion was not remedied either by the court's [answer] in response to their query or by other instructions." (*Scott,* at p. 152; see *Krouse,* at p. 73.[9]) Instead, by misstating the test of causation in its answer to such inquiry, the court raised the bar to an impossibly high level for Sandoval because very little in human affairs is absolutely certain. (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 120 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].)[10] More particularly, the court

---

[8] "[I]f the jury regarded the two instructions as inconsistent, it cannot be assumed that the jury ignored the improper instruction and based its verdict solely on the correct one. . . . ' "The jury are bound (and so instructed) to accept the court's instructions as correct statements of the law. . . . They are likely to be confused and misled by the conflicting statements, and it is not easy to determine which charge controlled their determination." . . .' . . . [¶] More significantly, where two instructions are inconsistent, the more specific charge controls the general charge. . . . Therefore, if the jury regarded the two instructions as inconsistent, it is more likely that they followed the improper [specific] instruction." (*LeMons, supra,* 21 Cal.3d at p. 878, citations & fn. omitted; see *Krouse v. Graham* (1977) 19 Cal.3d 59, 73 [137 Cal.Rptr. 863, 562 P.2d 1022] (*Krouse*); *McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1158 [29 Cal.Rptr.2d 559] (*McLaughlin*).)

[9] " ' "The prejudicial effect of a *misstatement* of an *important principle of law* cannot easily be overcome by another declaration contradicting it." ' " (*Krouse, supra,* 19 Cal.3d at p. 73.)

[10] 'In the ordinary case the question becomes one of what would have happened if [the defendant had acted] otherwise. This is of course incapable of mathematical proof, and a certain element of guesswork is always involved. . . . When a child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved him; but the experience of the community is that with guards present people are commonly saved, and this

required Sandoval to eliminate any possibility that the attack on Sandoval's decedent would have occurred even if the proper security had been provided. Thus, any remotely possible scenario imagined by the jury, no matter how unlikely, would defeat liability.[11] Hence, the court's erroneous answer to the jury's inquiry imposed on Sandoval a standard impossible to meet. Further, the jury's verdict was close, with three jurors answering in Sandoval's favor question No. 3 on the special verdict form. (*LeMons*, at pp. 876-877; *Scott*, at pp. 152-153.) Accordingly, since on this record it is more likely than not that an outcome more favorable to Sandoval would have resulted at trial absent the court's erroneous answer to the jury's inquiry during deliberation, the judgment must be reversed. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)[12]

## IV

### DISPOSITION

The judgment is reversed and the matter remanded to the superior court for further proceedings. Appellants shall have costs on appeal.

Benke, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied January 24, 2002, and respondent's petition for review by the Supreme Court was denied April 10, 2002. George, C. J., and Chin, J., did not participate therein.

---

affords a sufficient basis for the conclusion that it is more likely than not that the absence of the guard played a significant part in the drowning.' " (*Campbell v. General Motors Corp.*, *supra*, 32 Cal.3d at p. 120; see Rest.2d Torts, § 433B, com. b on subd. (1), p. 443 ["The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise."].)

[11]For example, even had the Bank stationed two armed guards where suggested by Sandoval's security expert, the attack on Sandoval's decedent might nevertheless have occurred if a sudden car crash had distracted the guards.

[12]In light of our conclusion, we need not reach Sandoval's ancillary contention that the court erroneously told the jury to determine only whether proper security measures would have prevented the assailant's criminal act in its entirety instead of instructing the jury to decide whether Sandoval's decedent's injuries would have been limited/reduced/minimized by the intervention of the proposed two off-duty armed police officers.